## No. 17-2206

In the United States Court of Appeals
for the Sixth Circuit

———————

# United States of America,

Plaintiff-Appellee,

v.

# Deonta Matthews,

Defendant-Appellant.

———————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 15-20201 (Hon. Marianne O. Battani)

———————

## Brief for the United States

———————

Matthew Schneider
United States Attorney

Stephanie M. Gorgon
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
stephanie.gorgon@usdoj.gov

# Table of Contents

Table of Authorities......................................................................... iii

Oral Argument Is Unnecessary ................................................. v

Issue Presented ........................................................................1

Statement of the Case ...............................................................2

A.    Deonta Matthews (aka CEO Tae) leads a violent gang
      called "Related Through Money." ....................................2

B.    Matthews pleads guilty to RICO conspiracy and a weapons
      charge, knowing that first-degree murder was included in
      his guideline calculation. ...............................................5

C.    The district judge denies Matthews's later attempt to
      withdraw his guilty pleas and sentences him below his
      guidelines. ..................................................................7

Summary of the Argument ....................................................10

Argument...............................................................................11

      The district court did not abuse its discretion in denying
      Matthews's motion to withdraw his guilty plea. ..........11

      1.    Length of delay....................................................12

      2.    Reason for failing to move for withdrawal earlier ..............13

      3.    Innocence............................................................16

      4.    Circumstances underlying entry of guilty plea ...................17

      5.    Defendant's nature and background ..................18

6.     Defendant's prior experience with the criminal justice system ............................................................................... 20

7.     Prejudice to the government if plea withdrawn ................... 20

Conclusion ...................................................................................... 21

Certificate of Service .................................................................... 22

Relevant District Court Documents .......................................... 23

# Table of Authorities

**Cases**

*United States v. Alexander*, 948 F.2d 1002 (6th Cir. 1991) ................... 11

*United States v. Baez*, 87 F.3d 805 (6th Cir. 1996) ................................ 13

*United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994) ................. 10, 12

*United States v. De Alba Pagan*, 33 F.3d 125 (6th Cir. 1994) ............... 15

*United States v. Durham*, 178 F.3d 796 (6th Cir. 1999) ................... 12, 20

*United States v. Ellis*, 470 F.3d 275 (6th Cir. 2006) .............................. 16

*United States v. Gibson*, 135 F.3d 1124 (6th Cir. 1998) ........................ 15

*United States v. Goldberg*, 862 F.2d 101 (6th Cir. 1988) ................. 11, 13

*United States v. Haygood*, 549 F.3d 1049 (6th Cir. 2008) ............... 11, 12

*United States v. Hyde*, 520 U.S. 670 (1997) .......................................... 15

*United States v. Martin*, 668 F.3d 787 (6th Cir. 2012) .............. 11, 16, 19

*United States v. Pluta*, 144 F.3d 968 (6th Cir. 1998) ............................ 17

*United States v. Spencer*, 836 F.2d 236 (6th Cir. 1987) ................... 13, 20

*United States v. Stephens*, 906 F.2d 251 (6th Cir. 1990) ................. 15, 18

## Statutes

18 U.S.C. § 1962(d)...........................................................................5

18 U.S.C. § 922(n)............................................................................5

## Rules

Fed. R. Crim. P. 11 ........................................................................11

## Oral Argument Is Unnecessary

The record is short, and the issue—whether the district judge abused her discretion in denying Matthews's motion to withdraw his guilty plea—is not complex. This appeal can and should be decided on the briefs.

## Issue Presented

Defendant Deonta Matthews pleaded guilty to RICO conspiracy and a weapons charge after the probation department notified him that his guideline calculation for those counts would include his murder of a rival gang member. Four months later, Matthews tried to withdraw his plea, primarily claiming he was not expecting the murder to be included in his guideline calculation. Did the district court abuse its discretion in denying Matthews's motion to withdraw his plea?

# Statement of the Case

### A.    Deonta Matthews (aka CEO Tae) leads a violent gang called "Related Through Money."

Related Through Money is a Detroit gang that commits carjackings, armed robberies, home invasions, and shootings. (Govt's Sealed Sentencing Memorandum, 2). Defendant Deonta Matthews was one of RTM's "CEOs," and he would often proclaim his status as "CEO Tae" on social media. (*Id*.). When a would-be gang member asked Matthews on Facebook what it would take to join RTM, Matthews responded, "Kill one of our enimies [sic]." (*Id*. at 3).

About a month later, Matthews himself murdered one of RTM's enemies. Marcus Cole was a marked man because he left RTM to join a rival gang and later shot an RTM member during a brawl at Cody High School. (*Id*. at 21–22, 25–27). So when Matthews saw Cole walking on the street, he got out of the Impala he was riding in and shot Cole eight times, killing him. (*Id*. at 25–26). Matthews returned to the car and said, "We even." (*Id*. at 27).

The driver of the Impala told law enforcement about the murder. (*Id*. at 25–27). A painter who was working next door to the shooting also

identified Matthews as the shooter. (*Id*. at 26). And Matthews himself bragged about killing Cole to several RTM members. (*Id*.).

Matthews also led other RTM members in committing violent "smash and grab" robberies at jewelry stores. In April 2014, he drove a crew of RTM members from Detroit to Milwaukee, Wisconsin, where they robbed a jewelry store of several Rolex watches. (*Id*. at 4–7). Back in Detroit, Matthews put the word out that he had "rollie[s]" for sale— and texted photos of the stolen Rolexes, with their tags still on. (*Id*. at 8–9).

In July 2014, Matthews and other RTM members tried to steal more luxury watches, this time targeting a pawnshop in Lexington, Kentucky. (*Id*. at 10–12). Matthews entered the shop to case it, and even photographed one of the target watches while it was still in the jewelry case. (*Id*. at 12). Three other RTM members came in and used a hammer to smash the jewelry case Matthews had photographed. (*Id*. at 14–15). But all the planning backfired. Matthews's behavior had put the manager on alert, and he quickly trained a gun on the three RTM members and held them in place until the police arrived. (*Id*. at 15). Matthews alone escaped. (*Id*.).

In October 2014, Matthews was indicted (in a separate case that precedes this one) on a single weapons charge: possession of a firearm with an altered serial number. (E.D. Mich. 14-cr-20655, R. 1: Indictment, 1–2). On February 25, 2015, Matthews pleaded guilty—without a written plea agreement—to that charge. (R. 207: Plea Tr., 1075–83).

Being under federal indictment did not seem to faze Matthews or deter him from possessing weapons: "Lol u know I still got strap fuk DA feds," he messaged an RTM member shortly after his indictment. (Govt's Sealed Sentencing Memorandum, 17). On February 26, 2015—the day after he pleaded guilty to the weapons charge—Redford police caught Matthews with a firearm hidden in a Dora the Explorer children's backpack. (*Id*. at 17–18). Evidence from one of Matthews's friend's cell phones confirmed Matthews's repeated possession of the firearm. A photograph showed Matthews had been wearing the firearm on his hip the day before (that is, on the day he pleaded guilty in federal court). (*Id*. at 18). And a video showed Matthews handling the firearm a couple days before that, on February 22. (*Id*. at 19).

4

**B.   Matthews pleads guilty to RICO conspiracy and a weapons charge, knowing that first-degree murder was included in his guideline calculation.**

Matthews was charged in this case in multiple superseding indictments, culminating with a third superseding indictment that charged him with a RICO conspiracy (18 U.S.C. § 1962(d)) and multiple weapons charges, including receipt of a firearm by a person under indictment (18 U.S.C. § 922(n)). (R. 206: Third Superseding Indictment, 1043–67).

Every indictment containing the RICO conspiracy charge alleged that one of Matthews's underlying racketeering activities was the murder of rival gang member "M.C." (Marcus Cole). (R. 14: First Superseding Indictment, 33; R. 101: Second Superseding Indictment, 301; R. 206: Third Superseding Indictment, 1052–53). The indictments specifically alleged Matthews "shot and killed" Cole. (R. 14: First Superseding Indictment, 33, ¶ q; R. 101: Second Superseding Indictment, 301, ¶ r; R. 206: Third Superseding Indictment, 1053, ¶ m).

The district court ordered the probation department to prepare a "pre-plea guideline calculations" report to advise the parties and the court of Matthews's potential advisory guideline range before his plea

hearing. (R. 329: Probation Letter, 2331). When Matthews's RICO conspiracy guidelines were calculated, they included the first-degree murder of Cole in Detroit, Michigan. (*Id.* at 2333–35). As a result of the murder, the report calculated an offense level of 47 (including a +4 role enhancement) before a 3-level reduction for acceptance of responsibility and the guidelines' 43-level cap brought Matthews's total offense level down to 43—and resulted in a guideline range of life. (*Id.*). The probation department's report stated that this guideline range of life could be capped by the statutory maximums depending on which counts applied. (*Id.* at 2335).

Nearly four months later, the district court held a plea hearing. (R. 283: Plea Tr., 1595). This hearing had already been adjourned once, from the week before, so Matthews could continue to discuss his options with his two attorneys. (*Id.*). Now, Matthews had a plan to plead guilty to the charges of RICO conspiracy (count one) and receipt of a firearm by a person under indictment (count four), in exchange for the two other counts being dismissed. This reduced his sentencing exposure from life to a maximum of 35 years (420 months). (R. 283: Plea Tr., 1597–99). Matthews's two attorneys had explained to Matthews (and did so again

at the plea hearing) that there would be a "mini trial" to determine the guidelines and that this plea "gives [Matthews] a lot of wiggle room" to convince the district judge to go lower than the 35-year cap. (*Id.* at 1602).

After all this was put on the record, the district judge took a short break at Matthews's request so he could again discuss this with his attorneys. (*Id.* at 1602–03). After the break, Matthews told the district judge he had decided to "[p]lea out" and pleaded to counts one and four. (*Id.* at 1603–15).

### C.    The district judge denies Matthews's later attempt to withdraw his guilty pleas and sentences him below his guidelines.

About four months after Matthews's plea, at what was supposed to be his sentencing, the district court instead held a hearing to address Matthews's April 28, 2017 pro se letters asking to withdraw his guilty pleas. (R. 311: Tr., 2161–63; R. 330: Matthews's Letters, 2337–40).

According to his counsel, Matthews made his pro se request to withdraw because he was upset that his PSR said that his guideline range was life or could go up to life. (R. 311: Tr., 2163). But as his counsel explained to Matthews before and during the hearing, the PSR

7

was revised to show Matthews's guideline range was capped by the statutory maximums at 420 months, which was the benefit he had sought when he pleaded guilty. (*Id.*; R. 283: Plea Tr., 1597–99; *see also* PSR, p. 1 (noting the March draft of the PSR had been revised in May), ¶ 98 (listing the guidelines as capped at 420 months)).

Matthews also spoke at the hearing. He said he was rushed at his plea and claimed, for the first time, that he had not understood that his guidelines might be scored to include his murder of Cole. (R. 311: Tr., 2165–66).

After briefing by the parties, the district court held another hearing and denied Matthews's motion. (R. 303: Govt's Response, 2095; R. 304: Def.'s Reply, 2114; R. 312: Tr., 2183). The district judge found Matthews had failed to meet his burden to show a "fair and just" reason to withdraw his guilty plea. (R. 312: Tr., 2193–98). She found that Matthews was not rushed and had a "clear understanding" that his maximum range would be 35 years under the plea versus life if he went to trial. (*Id.* at 2194).

Matthews's statutory maximum was what he thought it would be when he pleaded guilty: 35 years (420 months). (R. 283: Plea Tr., 1597–

99, 1602, 1609; R. 312: Tr., 2191, 2194–95; PSR ¶ 98). His guidelines were 360–420 months in prison. (PSR ¶ 98). The government asked the district judge to impose a sentence at the top of that range. (R. 325: Sentencing Tr., 2298). Matthews asked for a downward variance to 25 years (300 months). (*Id*. at 2286; R. 306: Def.'s Sentencing Memorandum, 2141). Because of Matthews's age, the district judge varied below the guideline range and imposed the sentence Matthews asked for: a total of 25 years (300 months) in prison. (R. 325: Sentencing Tr., 2303, 2306–07; R. 314: Judgment, 2208). Matthews timely appealed. (R. 315: Notice of Appeal, 2214).

## Summary of the Argument

The district court did not abuse its discretion in denying Matthews's motion to withdraw his plea. Matthews failed to meet his burden to show a fair and just reason for it—and none of the *Bashara* factors weighed in his favor. Matthews waited over three months to try to withdraw. And Matthews's stated reasons—he was rushed and had misapprehended his guideline range—were not credible and not reason enough to permit withdrawal. Matthews never asserted his innocence, but rather asserted a tactical change of heart about sentencing. Yet the circumstances of his guilty plea showed Matthews was well aware of the benefit of the bargain and knew the likely guideline range. The record further shows that Matthews was a high-school graduate who had attended some college and had prior experience in the state and federal criminal justice systems.

Because Matthews did not establish a fair and just reason to withdraw his plea, the government was not required to establish prejudice. But the district court considered this factor, too, and did not abuse its discretion in finding prejudice in forcing the government to

prepare its case again—particularly after cooperating witnesses had already been sentenced and threatened.

# Argument

## The district court did not abuse its discretion in denying Matthews's motion to withdraw his guilty plea.

This court reviews a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012). A defendant has no right to withdraw a guilty plea, and bears the burden of showing "a fair and just reason" under Rule 11 for the withdrawal. *Id.*; Fed. R. Crim. P. 11(d)(2)(B). The purpose of this rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). The rule does not allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* (cleaned up).

In deciding whether to grant a motion to withdraw a guilty plea, a trial judge has "broad discretion," *United States v. Goldberg*, 862 F.2d 101, 103 (6th Cir. 1988), and considers a "general and nonexclusive" list of factors, *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir.

2008). These factors include: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence or absence of a valid reason for the failure to move to withdraw earlier in the proceedings; (3) whether the defendant has asserted his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the defendant's prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

None of those factors cut in Matthews's favor.

### 1.   Length of delay

Matthews waited over three months before attempting to withdraw his plea. (*Compare* R. 283: Plea Tr., 1593 (January 17, 2017), *with* R. 330: Matthews's Letters, 2337–40 (dated April 28, 2017)). More precisely, 102 days passed between Matthews's guilty plea and his writing letters asking to withdraw his plea. Although the district court weighed this factor in Matthews's favor, this court has consistently found far shorter periods to be excessive. *See, e.g.*, *United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir. 1999) (77 days); *United States*

*v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (36 days).

This factor weighed against withdrawal.

### 2.    Reason for failing to move for withdrawal earlier

Matthews did not have a good reason for failing to move for withdrawal earlier. The district judge was generous toward Matthews in assessing this factor, finding it weighed in his favor because little over a month passed between the first draft of the PSR (which scored Matthews's murder of Cole) and Matthews's letters seeking to withdraw his guilty pleas. But legally and factually, Matthews's stated reason for his delay—his supposed surprise that his murder of Cole was included as relevant conduct—does not weigh in favor of withdrawal.

First, the facts. Matthews's own counsel could not back up Matthews's claim that he did not know Cole's murder could be scored against him. (R. 312: Tr., 2191–92). In fact, the record shows that Matthews *knew* the probation department would score the murder against him *before* he pleaded guilty. (R. 329: Probation Letter, 2333–35 (scoring the Cole murder as relevant conduct); R. 312: Tr., 2192–93

13

(district court and parties' acknowledgment of the circulation of that letter)). And before that, every indictment that charged Matthews with RICO conspiracy alleged he "shot and killed" Cole.

Nevertheless, Matthews suggests on appeal that he was blindsided by a dramatic increase in the guideline calculations. But when he pleaded guilty, Matthews acknowledged sentencing would be a "mini trial" over the guidelines. (R. 283: Plea Tr., 1602). And he had already been put on notice that his guidelines had been calculated as, at best, 360–420 months and, at worst, life. (R. 329: Probation Letter, 2335; PSR ¶ 98). There is no indication that Matthews ever aimed for or expected guidelines in the 108–135 month range he now mentions on appeal. *See* Matthews Br. 16. Moreover, at his sentencing, Matthews *withdrew* his objection to the scoring of the murder as relevant conduct, acknowledged his involvement in it, and asked for a downward variance of 25 years (300 months) in prison—a sentence nearly three times as long as the guideline range he now claims he had anticipated. (R. 325: Sentencing Tr., 2276, 2285–86).

14

Second, the law. Even if Matthews had truly anticipated a much lower guideline range, a guilty plea is a "grave and solemn act," and may not be withdrawn on a "whim" or because a defendant "decided to alter his tactics." *United States v. Hyde*, 520 U.S. 670, 677 (1997) (cleaned up). Thus, a "strategic miscalculation" is not a fair and just reason for withdrawing an otherwise valid plea. *United States v. Gibson*, 135 F.3d 1124, 1127 (6th Cir. 1998). Nor is the fact a defendant's guideline range is higher than expected. *Id.*; *see also United States v. De Alba Pagan*, 33 F.3d 125, 127 (6th Cir. 1994) ("[T]he fact that a defendant misapprehends the likely sentencing guideline range does not constitute a fair and just reason for withdrawing his guilty plea."); *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) (holding no abuse of discretion where the defendant "was adequately informed of the consequences of his plea, even if the specific Guideline range was not known by him").

To permit withdrawal of a plea based on tactics "would degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Hyde*, 520 U.S. at 677. Or—to borrow from

15

Matthews's jailhouse acknowledgment of a change in tactics—a boxing

match:

> YEA IM BOUT TO JUST PROCEED TO TRIAL I AINT
> TAKIN NO PLEAS IM PULLIN OUT THAT SHIT THEY
> ON BS IN I AINT HAVIN IT **IMA BOX 4 MINES FUCK IT**
> **THATS MY NEXT MOVE**.

(R. 303: Govt's Response, 2096 (emphasis supplied)). This factor

weighed against withdrawal.

### 3.    Innocence

Matthews's admission of guilt, under oath, at the plea hearing

supports the district judge's decision not to permit withdrawal. *Martin*,

668 F.3d at 796; *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006)

("When a defendant has entered a knowing and voluntary plea of guilty

at a hearing at which he acknowledged committing the crime, the

occasion for setting aside a guilty plea should seldom arise.").

When he sought to withdraw his plea, Matthews's only concern

was the length of his sentence, not the adjudication of his guilt. *See*

*Martin*, 668 F.3d at 796. Throughout the criminal proceedings,

Matthews admitted his guilt to the charged offenses—namely, RICO

conspiracy and possession of a firearm while under indictment.

Matthews's denial that he murdered Cole is not a claim of innocence

because it "do[es] not relate to any of the elements necessary to establish [the defendant's] guilt" but "only affect[s] the presence of aggravating circumstances relevant to *sentencing*, not *guilt*." *United States v. Pluta*, 144 F.3d 968, 974 (6th Cir. 1998).

### 4.    Circumstances underlying entry of guilty plea

At his plea hearing, Matthews was advised of the rights he was giving up and he affirmed he wanted to plead guilty. (R. 283: Plea Tr., 1603–08). The district court did not find Matthews's later claim that he was "rushed" credible; to the contrary, she found that Matthews had been "taking a very active part on this case for years" and "understood what was going on." (R. 312: Tr., 2196).

The district court also found that, at the time of his plea, Matthews had a "clear understanding" of the benefit of his bargain. (*Id.* at 2193–95). Matthews pleaded guilty for the ability to cap his sentencing exposure to 35 years (instead of life)—a benefit that was repeatedly discussed throughout the plea hearing. (R. 283: Plea Tr., 1597–1600, 1602, 1604, 1608–09). The district judge herself repeatedly advised Matthews of the statutory maximum. (*Id.* at 1600, 1608–09).

And even Matthews's counsel believed this had been properly explained to him. (R. 312: Tr., 2191).

The district court was not required to go further and give Matthews an estimate of his guidelines before he pleaded guilty. *See Stephens*, 906 F.2d at 253–54. Indeed, Matthews and his counsel also acknowledged there was no guarantee on the guideline range and that there would be a "mini trial" to determine the guidelines. (R. 283: Plea Tr., 1602). Moreover, the circumstances of Matthews's plea show that Matthews did in fact receive an estimate from the Probation Department before he pleaded guilty—one that actually ended up being a bit *lower* later at sentencing. (*Compare* R. 329: Probation Letter, 2335 (calculating, before Matthews pleaded guilty, a total offense level of 43 and range of life in prison); *with* PSR ¶¶ 47, 57, 63 (calculating a total offense level of 41 and range of 360–420 months in prison)).

### 5.    Defendant's nature and background

At the time of his plea, Matthews was a 21-year-old high-school graduate with some college education. (R. 283: Tr., 1605). This court has found other defendants with only "some high school education" to have

a nature and background that weighed against withdrawal. *Martin*, 668 F.3d at 796–97.

Matthews nevertheless claims he was a young, confused neophyte. But that's not supported by the record, which shows he had already had the hearing adjourned once and was represented by two attorneys. Matthews is a self-described "smart, ambitious" person who rose to become a "CEO" within a ruthless and violent street gang. (PSR ¶¶ 82, 14, 16–17). The district court also found Matthews was "an intelligent young man." (R. 312: Tr., 2196).

Moreover, in his jailhouse correspondence, Matthews demonstrated a keen understanding of his situation, including the benefit of his bargain and that the guidelines would be determined later at sentencing:

> I D[on't] K[now] MY GUIDE LINES YET
> . . .
>
> LIKE I SAY ITS STILL AMINI TRIAL . . . . ITS JUST
> GONE BE MY JUDGE DISSION WHAT I GET . . . . [THE
> PLEA] TOOK THE L[ife] OFF ME SO THATS STR8.
> . . .
>
> ITOOK A PLEA TO 0 TO 35 YRS BUT I D K WHAT IMA
> GET ILL KNO ON MAY 2ND [at sentencing] . . .

(R. 303: Govt's Response, 2101).

### 6.    Defendant's prior experience with the criminal justice system

Matthews had prior experience in both the state and federal criminal courts. (PSR ¶¶ 66–67). Matthews had even pleaded guilty without a written agreement before the same federal judge within the past year. (R. 312: Tr., 2197). Matthews's prior experience with the criminal justice system weighed against withdrawal.

### 7.    Prejudice to the government if plea withdrawn

The government need not establish prejudice from a plea withdrawal unless the defendant has first established a fair and just reason for allowing the withdrawal. *United States v. Spencer*, 836 F.2d 236, 240 (6th Cir. 1987). But the district court may consider potential prejudice in exercising its discretion. *Id*.

Matthews never established a fair and just reason to withdraw his plea. But even if he had, the district court did not abuse its discretion in finding the government demonstrated prejudice. Matthews pleaded guilty two weeks before trial. (R. 312: Tr., 2197). This Court has previously found prejudice in "forcing the government to prepare its case once again." *Durham*, 178 F.3d at 799. And here, there were additional aggravating circumstances: the cooperators had now pleaded

guilty and they had been threatened against testifying. (R. 312: Tr.,

2197; R. 303: Govt's Response, 2110–12). Even if Matthews himself was

not behind the threats, the fact that government witnesses had been

tampered with demonstrated prejudice to the government in the event

that Matthews's plea was withdrawn.

## Conclusion

The district court's judgment should be affirmed.

Respectfully submitted,

Matthew Schneider
United States Attorney

*/s/ Stephanie M. Gorgon*
Stephanie M. Gorgon
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
stephanie.gorgon@usdoj.gov

Date:  September 17, 2018

## Certificate of Service

I certify that on September 17, 2018, I electronically filed this brief for the United States with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorneys of record:

Benjamin D. Allen
benallen@gmalaw.com

/s/ Stephanie M. Gorgon
Assistant United States Attorney

22

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| | **Case No. 14-cr-20655** | |
| 1 | Indictment | 1–3 |
| | **Case No. 15-cr-20201** | |
| 14 | First Superseding Indictment | 22–46 |
| 101 | Second Superseding Indictment | 290–322 |
| 206 | Third Superseding Indictment | 1043–1072 |
| 207 | Plea Hearing Tr. 02/25/2015 | 1073–1085 |
| 283 | Plea Hearing Tr. 01/17/2017 | 1593–1617 |
| 303 | Response to motion to withdrawal guilty plea | 2095–2113 |
| 304 | Reply to response | 2114–2118 |
| 306 | Defendant's Sentencing Memorandum | 2141–2152 |
| 311 | Sentencing Tr. 05/31/2017 | 2159–2182 |
| 312 | Hearing Tr. 07/06/2017 | 2183–2205 |
| 314 | Judgment | 2207–2213 |
| 315 | Notice of Appeal | 2214 |
| 325 | Sentencing Tr. 09/21/2017 | 2273–2316 |

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 329 | Sealed Probation Letter 09/23/16 | 2331–2336 |
| 330 | Sealed Matthews's Letters 04/28/17 | 2337–2340 |
| n/a | Presentence Report | n/a |